PEOPLE *v.* CIOCARLAN.

SAME *v.* FOX.

SAME *v.* PEEL.

1. INFANTS—STREET TRADES—DISTRIBUTION OF RELIGIOUS LITERATURE.

Distribution of religious literature and solicitation of attendance at a religious meeting, wearing of sandwich signs and offering for sale of religious tracts on the public street by children ranging in age from 6 to 12 years was within city's street trades ordinance prohibiting any male under 12 years of age and any female under 18 from engaging "in any street trades."

2. SAME—AUTHORITY OF STATE OVER CHILDREN'S ACTIVITIES.

The State's authority over children's activities is broader than over like actions of adults.

3. CONSTITUTIONAL LAW—EQUAL PROTECTION—CHILDREN—RELIGIOUS ACTIVITIES.

City's street trades ordinance prohibiting children under specified ages from engaging "in any street trade" enumerated

therein is not unconstitutional as a denial of equal protection to parents permitting children within prohibition to distribute religious literature and advertise a religious meeting (U. S. Const. ams. 1, 14; Mich. Const. 1908, art. 2, §§ 3, 4).

4. SAME—EQUAL PROTECTION—CHILDREN OF RELIGIOUS SECT—USE OF PUBLIC HIGHWAYS.

Exclusion of children of religious sect from using public highways in a manner not permitted to other children does not constitute a denial of equal protection (U. S. Const. ams. 1, 14; Mich. Const. 1908, art. 2, §§ 3, 4).

Appeal from Wayne; Murphy (Thomas J.), J. Submitted October 18, 1946. (Docket Nos. 78–80, Calendar Nos. 43,233–43,235.) Decided April 8, 1947. Certiorari denied by Supreme Court of the United States October 13, 1947.

John George Ciocarlan, Stella Fox and Hazel Peel were convicted in Recorder's Court for the City of Detroit of violation of ordinance prohibiting minors from engaging in street trades. Defendants reviewed judgments of Recorder's Court by certiorari in Circuit Court. Defendants appeal. Cases consolidated for argument. Affirmed.

*William R. McCredie* and *Hayden C. Covington,* for appellants.

*William E. Dowling,* Corporation Counsel, and *Arthur L. Barkey,* Assistant Corporation Counsel, for the people.

REID, J. These three cases were consolidated for purpose of argument on appeal in this Court. In each case the defendant appealed from a sentence in recorder's court for the city of Detroit, traffic and ordinance division, to the circuit court for the county of Wayne, which affirmed the judgment and sentence of recorder's court in each case.

Each case involves a claim on the part of defendant that young children have a right to be on the streets of Detroit to distribute religious literature and solicit attendance at a religious meeting, notwithstanding the prohibition of the so-called "street trades" ordinance of the city of Detroit, the pertinent parts of which are as follows:

"SEC. 1. Definition. For the purpose of this ordinance the words 'street trade' shall mean the business, occupation, undertaking or pursuit of:

(a) Peddling
(b) Boot blacking
(c) Delivering goods, wares, merchandise, telegrams, newspapers, magazines, periodicals, advertising matter, or any other printed or written material.
(d) Distributing, selling or offering for sale, goods, wares, merchandise, newspapers, magazines, periodicals, advertising matter or any other printed or written material
(e) Soliciting subscriptions for newspapers, magazines or periodicals
(f) Offering services for hire or gain and/or
(g) Soliciting funds for the awarding of prizes by punchboards or otherwise
when conducted in any street, alley, park, square or other public place, or in the lobby or entrance of any building frequented by the public or conducted by house to house canvassing.

"SEC. 2. No male under 12 years of age and no female under 18 years of age shall engage in any street trade. Provided, however, any male over the age of 10 and under the age of 12 years actively engaged in delivering and/or selling magazines or periodicals on an established residential neighborhood route, at the date of the adoption hereof, may continue to do so subject to the provisions of this ordinance. It shall be unlawful to engage or permit the employment of any boys under the age of 12

years not now actively engaged in such delivery and/or selling, it being the intent of this provision to permit only such boys under 12 years, and over the age of 10 years, now actively engaged in delivery and/or selling magazines or periodicals on an established residential neighborhood route to continue such delivery and/or selling.

"Sec. 3. No male under 17 years of age shall engage in any street trade during school hours, unless legally excused from school, as now or hereafter provided by law. No male under the age of 17 shall engage in any street trade between the hours of 8 o'clock p.m. and 5 o'clock a.m. Provided, that any male over the age of 14 may sell and/or deliver periodicals, newspapers or magazines until 10 o'clock p.m. No male under the age of 17 years shall engage in any street trade for a combined school and work period of more than eight hours in any one day.

"Sec. 4. It shall be unlawful for any person, firm, association, partnership, corporation or organization to hire or employ, or permit to be hired or employed, or suffer to work in any street trade any minor contrary to the terms of this ordinance. No person, firm, association, partnership, corporation or organization shall give, sell, deliver or consign any goods, wares, or merchandise, including newspapers, magazines, periodicals, advertising matter or any printed or written material to any minor for the purpose of selling, distributing or delivering the same in any street trade in violation of the terms of this ordinance. It shall be unlawful for any parent, guardian or custodian to suffer, permit, allow or induce any minor to engage in any street trade contrary to the provisions of this ordinance."

The questions involved in these cases, as propounded by the plaintiff appellee, are as follows: (1) Does the ordinance embrace the defendants' conduct, and (2) Does the ordinance, if construed as

embracing the defendants' conduct, violate the rights guaranteed to them, and their children, by the First and Fourteenth Amendments to the Constitution of the United States, and article 2, §§ 3 and 4 of the Constitution of the State of Michigan (1908)?

In the case against defendant John George Ciocarlan, there is testimony in the record to show the following facts: Defendant, 52 years of age, together with his wife and three daughters, all of whom are Jehovah's Witnesses, appeared at the intersection of Michigan and Second avenues in the city of Detroit, on August 21, 1943, at 10:30 a.m., for the purpose of advertising a public Bible lecture to be given at Cass Technical high school the following day. They had leaflets for distribution and sandwich signs telling of the lecture they were advertising and in addition had certain printed publications which they had obtained from the Watch Tower Bible & Tract Society. Defendant took his position on the south side of the intersection of said streets, while his wife and the three children crossed over to the northwest corner. Elizabeth, 6 years old and the youngest of the children, was holding up in her hand, as though holding it for sale, a copy of "Watchtower" and "Consolation" magazines published by the Watch Tower Bible & Tract Society. Complainant officer Balaze testified that Elizabeth had a cloth magazine bag suspended by a strap from her shoulder on one side of which was printed the words "The Watchtower explains the Theocratic Government, 5¢ a copy," and on the other side of which was printed, "Watchtower and Consolation 5¢ per copy." The other children, Ruth, age 8, and Adeline, age 12, had placards hanging on them in sandwich fashion, and were equipped with a supply of the printed leaflets. Both the placards and the leaflets announced that a Bible lecture

entitled "Freedom in the New World" was to be given the following day at Cass Technical high school. Officer Balaze testified that Ruth also was holding up in her hand copies of the same magazines and had a similar bag, but Ruth denied this in her testimony. The three children were standing together and the mother was from about 10 feet to between 1 or 2 car lengths away from them. Officer Balaze testified that there were many people on the sidewalk at that intersection, including "bums." Although the officer did not see the children distribute any handbills or magazines, the two children who testified said they had been handing out leaflets and at the same time saying, "Here is an invitation to a convention for a meeting on Sunday at Cass Technical high." The children testified that they were engaged in this activity for the purpose of preaching the gospel of God's kingdom, and that such was their way of worshipping God. The children and the mother were driven to the location by the defendant in his automobile. Defendant testified he knew they were there and what they were going to do, because they were ministers. The magazines and handbills which were being distributed related entirely to the activities and doctrine of the Jehovah's Witnesses. There was no testimony that anyone accepted from the children a copy of any of the magazines nor was there any testimony that any money was received by them.

In the case against defendant Stella Fox, there is testimony in the record to show the following facts: Defendant, together with her 12-year-old daughter, Dorothy, appeared at the intersection of Gratiot and Randolph streets in the city of Detroit, on August 21, 1943, around 10 a.m., for the purpose of advertising a public Bible lecture to be given at Cass Technical high school the following day. Dorothy

was standing on the sidewalk near her mother. At
11:50 a.m., both defendant and her daughter had
cardboard placards hanging on them in sandwich
fashion, and were equipped with a supply of printed
Jehovah Witness literature, "Watchtower" maga-
zines and leaflets, all of which related entirely to the
activities and doctrine of Jehovah's Witnesses.
They were handing out invitations to the free Bible
lecture the next day, to persons walking along the
sidewalk, and while they were thus engaged, a po-
licewoman accosted them and informed defendant
that she was violating the city ordinance in allow-
ing her child to participate in the street advertising
activity. Defendant replied that it was her sacred
duty to have her child serve Jehovah, that she had
placed her daughter Dorothy there, and that she per-
mitted her daughter to do what she was doing.

In the case against the defendant Hazel Peel,
there is testimony in the record to show the follow-
ing facts: Defendant, together with her two sons,
Duane, age 8, and Allen, age 10, appeared at the
intersection of Woodward and State streets in the
city of Detroit on August 21, 1943, around 11 a.m.,
for the purpose of advertising a public Bible lecture
to be given at Cass Technical high school the follow-
ing day. The two boys stood near the corner about
10 or 15 feet away from their mother. Each of the
boys, as well as defendant, had cardboard placards
hanging on them in sandwich fashion, and were
equipped with a supply of printed handbills reading,
"Freedom in the New World, public address by
Mr. N. H. Knorr, Watch Tower Society, Sunday
August 22d, 4:00 p.m., Cass Technical high school,
Vernor highway and Second avenue, Detroit," and
while the children and defendant were handing out
these handbills, a policewoman, dispatched by police
headquarters for that purpose, accosted the two

boys. They pointed out their mother, and the police-woman went over to her and asked her whether the boys were hers and she said that they were, and that they were under her supervision, and she permitted them to be there. Defendant was then given a ticket for violation of the ordinance in question. The handbills related entirely to the activities and doctrine of Jehovah's Witnesses.

Defendants in all three cases claim that because as parents they are entitled to train their children according to their own accepted standards of religious worship, the fact that they caused their children to be on the streets of the city of Detroit handing out literature and displaying advertising matter pertaining to the activities and doctrines of Jehovah's Witnesses, did not constitute a violation of the ordinance of the city of Detroit under which they were convicted, and that it was not the intention of the people of the city of Detroit in adopting the ordinance to prohibit such activities as were described in the testimony in each case; that the right of the defendants thus to have their children with them on the streets of Detroit was part of the children's religious training, and that defendants had a right under the First and Fourteenth Amendments to the United States Constitution, and under article 2, §§ 3 and 4, of the Michigan State Constitution (1908), to do all the things that it was shown in the testimony they did.

Defendants cite *Murdock* v. *Pennsylvania,* 319 U. S. 105 (63 Sup. Ct. 870, 87 L. Ed. 1292, 146 A. L. R. 82). The ordinance in that case forbade canvassing for or soliciting in the city, orders for goods, et cetera, or delivering such articles so solicited, unless a license were procured from the burgess. The prohibition of that ordinance very evidently was aimed at adults; minors were not, as such, mentioned in the ordinance.

In *People* v. *Lechner*, 307 Mich. 358, we set aside a conviction of the defendant (an adult) of violation of an ordinance enacted in 1905 by the city of Cadillac, which required a street peddler to secure a license for a fee of $5 a day or $25 a month. The defendant was convicted of making sales (without obtaining a license) of pamphlets called "Watchtower" and "Consolation" for 5 cents each. Defendant claimed that she was a minister of the gospel and that the ordinance as applied to her activities abridged the freedoms of worship, speech and press vouchsafed to her by the First and Fourteenth Amendments to the United States Constitution and article 2, §§ 3 and 4 of the Michigan State Constitution (1908), inasmuch as the literature that she made sale of was literature solely of the Jehovah's Witnesses and that it was entirely religious in nature. Following *Jones* v. *Opelika, Bowden* v. *Fort Smith, Jobin* v. *Arizona, Murdock* v. *Pennsylvania, Martin* v. *Struthers, Douglas* v. *Jeannette*, 319 U. S. 103–182 (63 Sup. Ct. 862–902, 87 L. Ed. 1290–1339), and other decisions of the United States supreme court, the conviction of the defendant in that case, an adult, was set aside.

For the decision of the instant case, we follow the case relied upon by plaintiff, *Prince* v. *Commonwealth of Massachusetts*, 321 U. S. 158, 168, 170, 171 (64 Sup. Ct. 438, 88 L. Ed. 645):

"The State's authority over children's activities is broader than over like actions of adults.   *   *   * We think that with reference to the public proclaiming of religion, upon the streets and in other similar public places, the power of the State to control the conduct of children reaches beyond the scope of its authority over adults, as is true in the case of other freedoms, and the rightful boundary of its power has not been crossed in this case.   *   *   * The contention is that the street, for Jehovah's Wit-

nesses and their children, is their church, since their conviction makes it so; and to deny them access to it for religious purposes as was done here has the same effect as excluding altar boys, youthful choristers, and other children from the edifices in which they practice their religious beliefs and worship. The argument hardly needs more than statement * * * to refute it. However Jehovah's Witnesses may conceive them, the public highways have not become their religious property merely by their assertion. And there is no denial of equal protection in excluding their children from doing there what no other children may do."

The United States supreme court in that case sustained the validity of the ordinance in question and affirmed the judgment of guilty of a violation of the ordinance, and sentence.

We do not find the ordinance in these cases invalid for any reason asserted by defendants. There is sufficient testimony in each case to sustain the finding of violation of the ordinance. The judgment and sentence appealed from in each case is affirmed.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, NORTH, and DETHMERS, JJ., concurred.